IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILLIAM B. SINGLEY                                                                                           PLAINTIFF

v.                                             No. 4:04CV01009 JLH

USFILTER RECOVERY SERVICES
(MID-ATLANTIC), INC.                                                                                      DEFENDANT

## OPINION AND ORDER

Pending before the Court is a motion for summary judgment filed by Defendant USFilter Recovery Services (Mid-Atlantic), Inc. ("USFilter") (Docket #20). William Singley brought suit against USFilter claiming that he was terminated at age 60 in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and in violation of Arkansas public policy. USFilter argues that there are no genuine issues of material fact and that it is entitled to summary judgment on both claims. For the reasons contained in this opinion, the Court DENIES summary judgment on the ADEA claim and GRANTS summary judgment on the claim of wrongful discharge in violation of public policy.

## I.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the Court views the facts in the light most favorable to non-moving party and draws all inferences in his favor, keeping in mind that "summary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim."

*Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). *See also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996).

## II.

USFilter specializes in the collection, transportation, storage, and recycling of non-hazardous used oils and oily waters, primarily through the use of vacuum trucks. In 1997, USFilter purchased an oil recovery services business from Mobley Corporation. Through that purchase, it acquired a transportation and storage facility in Little Rock that became part of USFilter's South-Central Division. Singley had been the sole salesman at that facility and he remained in that position after the purchase. Under both Mobley and USFilter, Singley's essential function was to sell oil recovery services to new and existing customers. Historically, USFilter and its predecessor offered its oil recovery services primarily to industrial and manufacturing customers. Indeed, Singley was termed an "industrial salesman," meaning that he sold principally, if not exclusively, to these customers. Singley enjoyed great success in his early career. He was praised by his supervisors for generating and maintaining large industrial accounts and for his general expertise in the area of sales.

Around 2000, industrial opportunities began to decline due to increased competition, the introduction of on-site treatment of oil products, and decreased production or closings of certain customers. Singley's total sales volume declined from 1999 - 2003 as a result. As a result, USFilter began expanding its offerings to commercial customers, including car dealerships, oil change shops, and automotive repair shops. In October 2002, Stan Thompson, Branch Manager for the Little Rock

facility, hired Doug Redmann, who is approximately twelve years younger than Singley, to focus on these commercial customers and to sell and service "parts cleaners."[1]  Redmann joined Singley as the second salesman in the Little Rock office but functioned primarily, if not exclusively, as a "commercial salesman."  After Redmann was hired, USFilter's commercial business grew rapidly. In the spring of 2003, the South Central Division abandoned the distinction between "industrial" and "commercial" salespersons and encouraged Redmann and Singley to generate new business in either market.  Singley testified that, despite this flexibility, he lacked opportunities to generate new business in the commercial market and continued to gravitate towards the industrial market.  Singley cites a number of factors impeding his ability or drive to generate commercial sales, including that it took as many as 20 commercial accounts to make up the sales revenue of one industrial account and that Thompson gave commercial sales lead sheets only to Redmann.  Despite the fact that he remained focused on the industrial market, Singley's sales volume and revenue exceeded that of Redmann's even at the time of Singley's termination.

During his employment, Singley voiced several complaints relating to environmental conditions at the Little Rock facility.  In September 2000, Singley approached Art Radcliffe, USFilter's Environmental Health and Safety ("EH&S") Manager, at a company meeting in Texas and, in a brief one- or two- minute confidential conversation with him, "expressed concern about the condition of the new tank farm in Little Rock." According to an e-mail documenting the matter, Radcliffe stated that the complaints "dealt with general housekeeping and operation practices." Singley testified that the "housekeeping and operational practices" mentioned to Radcliffe related to making sure that company procedures were followed during loading and unloading, i.e., making

---

[1] Prior to 2002, route oil drivers used to sell products and services to these customers.

sure that hose connections were tight when oil transfers were made and that employees were present during this process. Singley testified that he approached Radcliffe because he was "concerned that the environmental situation in Little Rock was such that if we were audited by our customers, the customers would not be pleased. They wouldn't do business with us. If they didn't do business with us, that impacted my income." Radcliffe documented this matter by e-mail to Larry Bennett in Human Resources, emphasizing that Singley's comments be kept confidential out of fear of retaliation and not shared with the branch or operational managers and that a copy of the email be placed in Singley's personnel file.

On October 13, 2000, Singley called Radcliffe and expressed concern that a spill had occurred in Little Rock a week before and that no report had been made to EH&S. Singley's complaint was largely substantiated (an unreported spill had occurred) and Radcliffe noted that he shared Singley's concern that company policy had not been followed. Again, a record was made by e-mail, forwarded to Bennett, and posted in Singley's personnel file.

After Radcliffe left the company, Singley spoke with Clifton Ferrell, an environmental manager in Kilgore, Texas, "less than a dozen times," informing him that spills were still occurring from time to time at the facility. According to Singley, these calls took place between 2001 and 2003. Singley never made any complaint or report to any private organization outside USFilter nor to any state or federal governmental agency regarding USFilter's actions, although Singley testified that he thought Thompson and Kenneth Cherry, South Central's Business Unit Manager, suspected he had.[2]

---

[2] Some time in 2002, someone other than Singley made an anonymous complaint by telephone with the Arkansas Department of Environmental Quality ("ADEQ"), which sparked an internal and external investigation at USFilter. Thompson and Bradley McWilliams, Operations

In June 2003, Kevin Trant, Senior Vice President and General Manager of Hydrocarbon Services Division, determined that USFilter was falling significantly behind its budget for the calendar year 2003. On June 16, he sent e-mails to Cherry and the other business unit managers, directing them to develop cost-reduction plans for their units. In one e-mail, Trant set an annualized cost savings target of $250,000 for the South Central Division. Cherry, in turn, directed Thompson to propose budget cuts for the Little Rock facility. Thompson initially proposed minimal cuts on the belief that the facility ran a "pretty lean operation." Thompson testified that Cherry responded that this would not be sufficient and advised him to look at whether two sales positions were cost-justified. Cherry, Thompson, and Bronson all state that they agreed that they would eliminate one sales position. The three state that due to the combination of a growing commercial market, a stagnant industrial market, Redmann's success in generating new business among commercial customers, Singley's seeming complacency in new business generation, and Thompson and McWilliams's ability to maintain existing industrial accounts, Singley was their choice for elimination. According to an exhibit attached to Cherry's affidavit, Cherry implemented annualized savings of $337,600 for the South Central Division. The elimination of Singley's sales position cut annual costs in the South Central Division by $85,000. In July 2003, Brooke Goode, Human Resources, and Bronson notified Singley that he was being terminated "for economic reasons."

After Singley's termination, Redmann worked as the sole salesperson in the Little Rock office. Singley's duties were assumed by Redmann, Thompson, and McWilliams. After some time,

---

Manager of the Little Rock facility, and possibly Bill Bronson, Sales Manager for the South Central Business Unit, speculated about the identify of the complainant and apparently believed it was one of the 13 employees in the Little Rock office. Cherry allegedly told Singley's cousin, Carolyn Singley, that he believed the informant was either Carolyn, Singley, or Joe Hopkins.

Redmann was promoted and Awon Perry Harston, approximately the same age as Redmann, replaced him.

### III.

Singley alleges that USFilter violated the ADEA. An employer violates the ADEA if it terminates an employee who is at least 40 years of age because of his age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). In a disparate treatment claim based, as here, on indirect evidence, the parties proceed under the traditional, burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 955 (8th Cir. 2001). Under this framework, a plaintiff must first make out a *prima facie* case of age discrimination. *Id*. If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer offers such a reason, the plaintiff must then present evidence sufficient to raise a question of material fact as to whether that reason was pretextual and to create a reasonable inference that age was a motivating factor in the adverse employment decision. *Id*.

In cases involving a reduction in force rather than a replacement of an older employee with a younger employee, a plaintiff's *prima facie* case consists of showing that (1) he is within the protected age group; (2) his performance met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's action. *Stidham v. Minn. Mining and Mfg., Inc.*, 399 F.3d 935, 938 (8th Cir. 2005) (citation omitted). "A minimal evidentiary showing will satisfy this burden of production." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005).

Clear evidence has been presented on the first and third elements. Singley was sixty years old when USFilter eliminated his position. USFilter disputes the second and fourth elements. First, USFilter argues that Singley's performance was unsatisfactory. In support, it points to decreased ratings received by Singley on job performance evaluations after 1998, comments in those evaluations that Singley needed to generate new sales and increase customer contact, and Singley's own testimony that he had grown complacent in those areas. Despite USFilter's effort to construe the 1999 - 2002 evaluations in a negative light, neither they nor accompanying testimony prove, as a matter of law, that Singley was unqualified for his position or that he failed to meet the legitimate expectations of his job. The rating decrease from a "5" to a "3" after 1998 can be explained in part by Thompson's own testimony regarding upper management's belief that frequent ratings of "5" would not allow managers to gauge improvement from year to year. As Thompson explained to Singley some time after 1998, a rating "5" would become very rare and would mean that an employee "walked on water." Even so, the evaluations Singley received after that point still reflected that he "[met] job requirements competently." These evaluations are not conclusive evidence that Singley failed to meet USFilter's expectations. Evidence that the issue of termination only arose in response to budget constraints, that Singley had held his job for more than ten years, and that he was consistently at the top or near the top in sales revenue in the southwest region satisfies Singley's burden of proof on the issue at the *prima facie* stage.

Second, USFilter contends that there is no evidence that age was a factor in its decision. Singley would have the Court infer discrimination from evidence that Redmann, age 48, was retained over Singley, age 60, and that Singley's duties were then reassigned to Thompson, McWilliams, and Redmann (and later, Redmann's replacement, Awon Perry Harston), all younger employees.

USFilter first argues that, because Singley was not replaced and because his duties were instead assumed by others, this evidence is insufficient to establish a *prima facie* case. In reduction-in-force cases, however, a plaintiff need not show that he was replaced by a younger employee. Instead, the traditional *McDonnell Douglas* framework is modified to require a plaintiff to produce additional evidence that age was a factor. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165-66 (8th Cir.1985). *See also Johnson v. Runyon*, 137 F.3d 1081, 1082 (8th Cir. 1998) (citation omitted). USFilter argues that Redmann was not similarly situated to Singley and that his retention does not provide any inference of discrimination. Before 2003, salesmen were classified as "commercial salesmen" and "industrial salesmen." Singley submits evidence that the South Central Business Unit abandoned the distinction in 2003. Singley and Redmann certainly retained their respective strengths and focuses, but, in all relevant respects, the two were similarly situated salesmen employed in the Little Rock office.[3] As for whether Redmann's retention supports an inference of discrimination, the Eighth Circuit has noted that the fourth element "additional showing" requirement is not a significant hurdle for plaintiffs. *Yates v. Rexton*, 267 F.3d 793, 799 (8th Cir. 2001) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir. 1995) ("The only question is whether the circumstances are such that, in the absence of an explanation from the defendant, a fact finder may reasonably infer intentional discrimination.")). After almost ten years of operating an office with only one

---

[3] USFilter argues for the first time in its reply that Redmann was over forty years of age himself and was not substantially younger than Singley. Neither point disqualifies Redmann as a comparator in this case. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (collecting cases and stating that age differences of ten or more years have generally been held to be sufficiently substantial to satisfy the "substantially younger" comparison); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996) (stating that comparison to an employee outside the protected class is not required in ADEA context because the ADEA prohibits discrimination on the basis of age and not class membership).

salesperson, USFilter hired a second, substantially younger sales person, only to eliminate Singley's position and reassign his duties among younger employees nine months later. This evidence certainly supports such an inference. *Cf. id*. at 799-800. The establishment of a *prima facie* case gives rise to an inference that age was a motivating factor in Singley's discharge. *Hillebrand v M-Tron Indus. Inc.*, 827 F.2d 363, 368 (8th Cir. 1987).

USFilter has submitted evidence of legitimate, non-discriminatory reasons for the discharge. USFilter attaches e-mails from Kevin Trant to Cherry and other Business Unit managers explaining that the Hydrocarbon Division was significantly over-budget after the first half of 2003 and instructing the unit managers to develop cost-reduction plans for their divisions. Cherry, Thompson, and Bronson's statements corroborate the agreement among the three that they would eliminate one sales position in the Little Rock facility and that the eliminated position would be Singley's. All three assert that the decision was based (1) on the future trends they predicted in the way of growth in the commercial market in Little Rock versus stagnancy in the industrial market and (2) on their shared belief that Redmann was more successful in growing the commercial customer base and thus would be the better match in light of these predicted market trends. USFilter succesfully meets its burden on summary judgment with this evidence. The fact that Singley was not aware of the budgetary constraints imposed on his managers at the time of his termination and the fact that only one job was eliminated in the Little Rock office are not pertinent. It is sufficient that USFilter's proferred reasons are supported by evidence and are facially non-discriminatory. *See Taylor v. QHG of Springdale, Inc.*, 218 F.3d 898, 900 (8th Cir. 2000).

Since USFilter has met its burden under *McDonnell Douglas*, Singley may avoid summary judgment if he presents evidence that (1) creates a question of material fact as to whether the

proffered reasons was pretextual, and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision. *Yates*, 267 F.3d at 800 (citing *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 921 (8th Cir. 2000)).  "[E]ven within the context of a legitimate reduction-in-force, an employer may not fire an employee because of his age." *Id.* (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000)).

Although the majority of Singley's efforts in proving pretext go to discredit USFilter's explanation that Redmann fit their sales needs better than Singley, the evidence creates a question of fact on whether the underlying reason for eliminating a sales position was pretextual. The linchpin of USFilter's explanation is that Cherry, Thompson, and Bronson eliminated Singley's position in response to mid-year budget constraints. According to this explanation, the decision to eliminate a sales position (and, in turn, the decision to eliminate Singley's sales position) would not have occurred but for the pressure applied by Trant to cut costs. If the stated impetus for eliminating Singley's position is pretextual, doubt is cast over the entire action.

When faced with a reduction-in-force situation, courts are not authorized to judge the wisdom of a company's business decision, only its honesty in making it. *Id.* (citing *Holley*, 771 F.2d at 1166 n.8). USFilter has submitted evidence that Cherry, Thompson, and Bronson decided to eliminate one of the two sales position in the Little Rock office as part of the mid-year cost-reduction plan directed by Trant. There is evidence, however, that discredits this explanation. In the e-mail sent to Cherry, Trant set as a target an annualized cost savings of $250,000 for the South Central Division. According to the exhibit attached to Cherry's affidavit, Cherry implemented annualized savings of $337,600 for the South Central Division, $85,000 of which came from the elimination of Singley's sales position. Thus, without the elimination of Singley's position, Cherry's cost

savings would still have exceeded Trant's target. USFilter offers no explanation as to why it decided to terminate a salesman in addition to the other cost savings when those other savings were enough to meet the corporate target. A jury could reasonably infer from this evidence that the cost reduction plan directed by Trant was not the true or sole reason for eliminating Singley's position.

"[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000). Singley has presented facts in his *prima facie* showing that create a reasonable inference that age played a part in USFilter's decision to terminate him. He has presented evidence that discredits USFilter's explanation. That evidence creates genuine issue of material fact as to whether age discrimination occurred. Summary judgment is denied on this claim.

**IV.**

Singley also brings a claim of wrongful discharge in violation of Arkansas public policy. Assuming that USFilter did in fact terminate Singley for making these complaints, the Court must determine whether the termination would constitute a violation of public policy under Arkansas law. *See Skrable v. St. Vincent Infirmary*, 57 Ark. App. 164, 168-69, 943 S.W.2d 236, 238 (1997).

Generally, at-will employment may be terminated by either party at any time, with or without cause. *City of Green Forest v. Morse*, 316 Ark. 540, 546, 873 S.W.2d 155, 158 (1994). Arkansas law recognizes a narrow exception to this general rule and allows a cause of action for wrongful discharge if an at-will employee "is fired in violation of a well-established public policy of the state." *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988). In Arkansas, the

Case 4:04-cv-01009-JLH   Document 33   Filed 08/05/05   Page 12 of 14

exception is extremely limited. *Id*. "It is not meant to protect merely private or proprietary interests." *Id*. Public policy has been violated "if an employer discharges an employee for reporting a violation of state or federal law." *Id*. at 250, 743 S.W.2d at 386. Unless the employer was violating some law, the plaintiff's action fails. *See Skrable*, 57 Ark. App. at 168-69, 943 S.W.2d at 238 (holding against the appellant where he had not represented that his employer was violating any law by its reported actions). As stated in *Skrable*, "the termination of an employee who divulges or threatens to expose mere deficiencies in an employer's performance of its contractual obligations does not offend public policy." *Id*. at 168, 943 S.W.2d at 238.

USFilter argues that Singley's action fails because it contends that Singley at no time reported conduct that constitutes a violation of federal or state law.[4] Singley asserts that he was terminated for voicing complaints about the environmental condition of the Little Rock facility on 14-16 separate occasions between 1999 and 2003. When asked at deposition what possible state or federal law the reported activity violated, Singley responded that it may have violated 40 C.F.R. § 265, 40 C.F.R. § 279, Arkansas Regulation 23, and probably the Federal Clean Water Act. In its brief in support of this motion, USFilter addresses these possible violations and argues that each does not apply to the conduct reported.[5] Singley fails to respond to this argument or to explain how the

---

[4] USFilter also argues that the cause of action fails because Singley cannot show awareness of the complaints on the part of the decision-makers in this case and that he cannot show a sufficient causal link between the discharge and the complaints made. Because summary judgment will be granted for other reasons, the Court will not address these arguments.

[5] USFilter argues that 40 C.F.R. § 265 was not violated because, among other reasons, the alleged actions or inactions by USFilter did not involve hazardous waste. It argues that 40 C.F.R. 279 and its parallel, Arkansas Regulation 23, does not apply because Singley has not shown how the steps taken to "clean up and manage properly the released used oil" were inadequate or unlawful. Finally, it argues that the Clean Water Act does not apply because Singley makes no allegation that any contaminated soil or waste entered a water source.

12

reported activity of USFilter's violated any law. Singley argues that to grant summary judgment against him would be to find that it is not the public policy of Arkansas that oil spills are to be reported and properly addressed. Singley cites no law in support of this expanded view of wrongful discharge, nor is the Court aware of any. On the contrary, Arkansas law requires Singley to show that he reported or threatened to report unlawful conduct. *See Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 472, 40 S.W.3d 784, 790-91 (2001); *Skrable*, at 168-69, 943 S.W.2d at 238. Constrained by the limited nature of this action, Singley's claim fails for lack of proof. Moreover, Singley admits in his deposition that he "was just concerned that the environmental situation in Little Rock was such that if we were audited by our customers, the customers would not be pleased. . . . If they didn't do business with us, that impacted my income." As noted, protection of one's proprietary interests or the contractual interests of one's company falls outside of the scope of this narrow claim. *See Sterling Drug*, 294 Ark. at 249, 743 S.W.2d at 385. For these reasons, USFilter is entitled to summary judgment on this claim.

**V.**

USFilter argues that, should summary judgment be denied, Singley's claims for compensatory and punitive damages are not recoverable under the ADEA.[6] Singley responds that he will modify his prayer for relief to comply with the ADEA.

**VI.**

USFilter also seeks tolling of Singley's claim for back pay. USFilter argues that Singley's failure to actively pursue comparable jobs since August 2003 precludes a recovery of back pay after

---

[6] USFilter also argues these damages are not recoverable under Arkansas law. Given summary judgment on the wrongful discharge claim, this argument is moot.

this period.  Singley responds that he has successfully mitigated his damages by procuring employment of the same kind as his employment with USFilter.  The evidence presented shows Singley obtaining a position as a salesman with USFilter's direct competitor, Agricultural Services, Inc., approximately four weeks after he was terminated.  According to deposition testimony, Singley spent four or five hours a week looking for a job and applied to one other employer other than Agricultural Services, Inc.  Singley testified that he earns less in salary and benefits package at Agricultural Services, Inc., than he did at USFilter but that he is "happy with [his] employment there" and has not sought other employment.

"The burden remains on the employer to show that the employee failed to mitigate his damages." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002).  USFilter also bears the burden of showing that there were suitable positions and that Singley failed to use reasonable care in seeking them.  *Id.* at 1062; *Denesha v. Farmers Ins. Exchange*, 161 F.3d 491, 501 (8th Cir. 1998).  The defendant fails to do so with the evidence presented.  The Court overrules this argument without prejudice to USFilter's right to voice it at trial.

## CONCLUSION

For the reasons contained herein, the Court DENIES summary judgment on the ADEA claim, GRANTS summary judgment on the wrongful discharge in violation of public policy claim, and DENIES USFilter's request to toll back pay without prejudice.

IT IS SO ORDERED this   5th   day of August, 2005.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE